William R. Shell, Wilmington, N.C., for defendant Garcia.

## In re GRAND JURY INVESTIGATION.

### No. 87–98–MISC–5.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Feb. 19, 1988.

## ORDER

BRITT, Chief Judge.

On 17 June 1987 the United States Attorney for this district filed an amended application seeking to compel the testimony of Daniel Garcia before a grand jury pursuant to the provisions of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 6001 *et seq.* The request was supported by a letter from Acting Assistant Attorney General William F. Weld as required. On that same date the court entered an order directing Garcia to appear and give testimony before the grand jury. The court fur-

ther provided, pursuant to the Organized Crime Control Act of 1970, that no testimony given by Garcia could be used against him in any criminal case (except prosecution for perjury, giving a false statement or otherwise failing to comply with the court's order). Thereafter, on 8 September 1987, Garcia appeared before a grand jury in Fayetteville, North Carolina, at which time he refused to testify. Because defendant was without counsel at his appearance before the grand jury the United States Attorney directed his reappearance on 13 October 1987, at which time his counsel was present. Defendant again refused to testify. On 18 November 1987 the government filed a motion requesting the court to enter an order for Garcia to show cause why he should not be held in contempt of court for failure to abide by its order. An order was entered and Garcia appeared before the undersigned, with counsel, on 17 December 1987. No evidence was presented by the government or respondent. However, respondent filed a response to the order to show cause and an affidavit. At the hearing the court heard arguments of counsel and allowed time thereafter within which to file additional briefs.

On 12 January 1988 the government filed a motion to transfer, requesting that this matter be transferred to Judge Terrence W. Boyle, before whom Garcia entered a plea of guilty to one count of a criminal indictment pursuant to a memorandum of plea agreement with the United States Attorney.

### FACTUAL BACKGROUND

On 28 November 1986 Garcia and a co-defendant were indicted in a thirteen-count indictment. The first count charged the defendants with conspiracy to possess with intent to distribute in excess of twenty kilograms of cocaine, and the remaining counts charged Garcia with the unlawful use of a telephone to promote an unlawful enterprise involving the sale and distribution of cocaine. Garcia was represented by Vincent J. Flynn, attorney of Miami, Florida, and William R. Shell, attorney of Wilmington, North Carolina. The attorneys for Garcia entered into negotiations with Assistant United States Attorney Thomas P. Swaim which culminated in the execution of a memorandum of plea agreement by which Garcia pled guilty to count one of the indictment, and the remaining counts were dismissed. Prior to the execution of the memorandum of plea agreement, Assistant United States Attorney Swaim wrote a letter to Attorney Flynn, dated 13 February 1987, in which he confirmed a telephone conversation regarding the terms of the proposed plea agreement. In that letter Mr. Swaim stated: "In return for this guilty plea to count one of the indictment, the government will (a) not require as part of the plea agreement that the defendant cooperate with law enforcement, (b) we will not oppose your motion to dismiss the remaining twelve felony counts against your client in the same indictment, and (c) we will recommend that your client not receive an active sentence in excess of fifteen (15) years, and otherwise stand silent as to sentencing." The memorandum of plea agreement was subsequently entered into, signed by Garcia, both of his attorneys, and Assistant United States Attorney Swaim. The memorandum of plea agreement provided for the dismissal of counts 2 through 13 and the recommendation of a fifteen-year sentence, among other provisions which are somewhat standard in this district.[1] There was nothing in the

1. The entire agreement reads as follows:

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and the Defendant, with the concurrence of his attorneys, Vincent J. Flynn and William Shell, have agreed that the above-entitled criminal case should be concluded in accordance with the terms and conditions of this Memorandum of Plea Agreement as follows:

1. This Memorandum of Plea Agreement constitutes the full and complete record of the plea agreement in this matter. There are no other terms of this agreement in addition to or different from the terms contained herein.
2. The Defendant agrees as follows:
(a) The Defendant shall enter a plea of guilty to Count One of the Indictment herein.
(b) The Defendant acknowledges that he fully understands that Count One of the Indictment charges him with conspiracy to il-

agreement regarding the defendant's "co-operation".

On 19 February 1987 Garcia, represented by Mr. Shell, appeared before Judge Boyle and entered a plea of guilty to count one of the indictment. Judge Boyle conducted a hearing pursuant to the provisions of Rule 11 of the Federal Rules of Criminal Procedure and thereafter approved the memorandum of plea agreement and accepted the plea. On 18 May 1987 Garcia again appeared before Judge Boyle for sentencing, at which time a sentence of fifteen years was imposed.

## THE MOTION TO TRANSFER

■ Criminal cases in the courts of this district are assigned according to the "Plan for Assignment and Calendaring of Felony Cases" adopted by this court on 2 September 1983. That plan provides that each judge shall handle the criminal docket for a continuous four-month period as assigned by the chief judge. It also provides that during the assigned period the judge is responsible for disposing of cases arising from, among other things, "disputed grand jury matters." The plan is intended to provide for the orderly and equitable distribution of the workload of the court among the judges and to give those judges who are not on the criminal rotation additional freedom in planning and implementing a calendar for the orderly disposition of civil cases. If the plan is to achieve its desired results, motions for transfer among judges of the court must bear close scrutiny and be approved only for compelling reasons. The only reason asserted by counsel for the government in seeking a transfer to Judge Boyle is the assertion that he is in a better position to determine the intention of the parties in entering into the plea agreement, he having conducted the Rule 11 proceeding. Had the motion been made earlier the court might have been inclined to be more favorably disposed toward granting it. However, having heard all of the arguments of the parties and having available a transcript of the proceeding before Judge Boyle, this court can see no good reason why Judge Boyle should be burdened with this criminal matter which arose during the regular rotation of the undersigned. The motion to transfer is, therefore, denied.

## THE CONTEMPT CITATION

Garcia contends that he should not be compelled to testify before the grand jury because the United States Attorney bargained away the right to call him as a witness by providing in the letter to his attorney that the government would not

legally possess and distribute a Schedule II narcotic controlled substance, to wit: cocaine, in amounts in excess of five (5) kilograms or more, in violation of Title 21, United States Code, Section 841(a)(1) and Section 846.

(b) The Defendant understands that the maximum [sic] penalty which could be imposed upon his plea of guilty to Count One of the Indictment is a fine of $4,000,000.00, or imprisonment for a mandatory minimum term of imprisonment of ten (10) years to a maximum term of imprisonment of life, or both such fine and imprisonment.

(c) The Defendant further understands that the Court may order that the Defendant make restitution to any victim pursuant to the provisions of Title 18, United States Code, Section 3579, and that the Court will impose an assessment of $50.00 for each count pursuant to the provisions of Title 18, United States Code, Section 3013(a).

(d) The Defendant understands fully that the Court is not bound by the Government's recommendation as to sentence.

(e) The Defendant understands fully that if the Court does not accept the Government's recommendation as to sentence, the Defendant nevertheless may not withdraw his plea of guilty.

(f) The Defendant agrees that, due to the requirements of the Victim and Witness Protection Act of 1982 (P.L. 97-291) the Defendant expressly waives his rights under Rule 32(c)(1) of the Fed.R.Crim.P. prohibiting disclosure of the presentence report before acceptance of his plea and hereby allows disclosure of the presentence report for the purposes set forth in the Act.

3. The Government agrees as follows:

(a) That it will not oppose Defendant's motion to dismiss Counts Two through Thirteen of the Indictment.

(b) That it will recommend that the Defendant receive no more than a fifteen (15) year active sentence, and otherwise stand silent as to sentencing. However, the Government reserves the right to present full evidence of the offense charged and to offer evidence and argument or rebuttal, and to respond to any motions filed by the Defendant pursuant to Rule 35(b), Federal Rules of Criminal Procedure.

require defendant to "cooperate with law enforcement." Contending that the letter is an essential part of the plea agreement, Garcia argues that to require his testimony now would amount to a breach of the agreement. At the very least Garcia contends that he *understood* the agreement to have that effect and thus he did not have the requisite *intent* to violate the court's order directing him to testify. The government contends, on the other hand, that even conceding the letter to be a part of the plea agreement it addressed only the *voluntary* cooperation of the defendant and did not address, and has nothing to do with, the *compelled* testimony of Garcia before a grand jury under the provisions of the Organized Crime Control Act of 1970.

Garcia is fearful that if he testifies before the grand jury he will be exposing members of his family, some of whom remain in Colombia, South America, to danger of great physical harm or even death.

Unless the plea agreement in some way mandates a different result, the decision here is governed by well recognized legal principles. In *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974), the Supreme Court stated:

> The power of a federal court to compel persons to appear and testify before a grand jury is ... firmly established. [Citations omitted.] The duty to testify has long been recognized as a basic obligation that every citizen owes his Government. [Citations omitted.] In *Branzburg v. Hayes* ... [408 U.S. 665, 682, 688 [92 S.Ct. 2646, 2657, 2660, 33 L.Ed.2d 626] (1972),] the Court noted that '[c]itizens generally are not constitutionally immune from grand jury subpoenas ...' and that 'the long standing principle that "the public ... has a right to every man's evidence" ... is particularly applicable to grand jury proceedings.'

■ Thus, everyone, including those who have been previously convicted or pled guilty, must testify when subpoenaed to do so before a grand jury unless privileged otherwise. Of course, defendant's fifth amendment privilege against self-incrimination is not at issue here since he has been granted immunity. The *Calandra* court also addressed fears that may be generated on the part of witnesses who are called to testify by saying: "The duty to testify may on occasion be burdensome and even embarrassing. It may cause injury to a witness' social and economic status. Yet the duty to testify has been regarded as 'so necessary to the administration of justice' that the witness' personal interest in privacy must yield to the public's overriding interest in full disclosure." *Calandra*, 414 U.S. at 345, 94 S.Ct. at 618.

■ Garcia's reliance on the plea agreement in this case is misplaced. He got *exactly* what he bargained for. Had he agreed to cooperate with the government, it is quite likely that the government would have made a recommendation for a lesser sentence. By pleading guilty without agreeing to cooperate, Garcia obtained from the government a promise for a recommendation of a fifteen-year sentence and a promise to dismiss the remaining twelve counts of the indictment which exposed him to an additional 74 years. Those counts were dismissed, the government lived up to the agreement by recommending fifteen years, and Judge Boyle followed that recommendation.[2]

The concerns which Garcia expresses for members of his family should he testify may indeed be very genuine. However, the government offered to do all that it could to protect members of his family by placing Garcia and members of his immediate family in the Witness Protection Program. Of course, the power of the United States government to protect witnesses and their families does not extend beyond the nation's borders. What happens to relatives who may remain in Colombia is, as is the great supply of illegal drugs coming from

---

2. The court is not called upon to interpret a plea agreement in which the government agrees that, in return for a plea of guilty to one count, the defendant will not be required to testify before a grand jury pursuant to subpoena. In fact, government counsel steadfastly maintains that he would not have entered such an agreement.

that country, beyond the control of United States authorities.

Had the government not provided Garcia with a second opportunity to testify before the grand jury, at which time his attorney was present, the court might be impressed with his argument that he did not intend to violate the court's order because of his understanding of the terms of the plea agreement. Since he has been given two opportunities to respond, the second after having the opportunity to consult with counsel, the court has no alternative but to find Garcia in contempt of this court for failure to abide by its order.

Title 28, United States Code, Section 1826(a) provides:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ... the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
>
> ....
>
> (2) the term of the grand jury, including extensions,
>
> before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

It is, therefore, ORDERED that Daniel Garcia be held in custody by the United States Marshal until the earlier of the following:

1. He purges himself of the contempt of this court by appearing before the grand jury of this district and giving to the grand jury his truthful testimony; or,

2. The term of the grand jury, including extensions, expires; or,

3. Eighteen months from today's date shall have passed.

The time Garcia remains in custody, pursuant to this contempt order, shall not be credited toward the sentence he is presently serving. *In re Grand Jury Proceedings (Thurmond),* 534 F.2d 41 (5th Cir.1976).